UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


WILLIAM CARPENTER,

           Plaintiff,                                              Hon. Wendell A. Miles

v.                                                    Case No. 4:06-CV-72

COMMISSIONER OF SOCIAL
SECURITY,

           Defendant.

_____/


**REPORT AND RECOMMENDATION**

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C.

§ 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim

for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and

XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative

record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall

be conclusive.

        The Commissioner determined that Plaintiff is not disabled as defined by the Act.

Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit

proposed findings of fact and recommendations for disposition of social security appeals, the

undersigned recommends that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

2

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.


## PROCEDURAL POSTURE

Plaintiff was 55 years of age at the time of the ALJ's decision.[1]  (Tr. 15).  He attended college for two years and worked previously as a welder, meat packer, computer operator, laborer, laundry worker, and injection mold operator.  (Tr. 65, 73-79).

Plaintiff applied for benefits on May 5, 2004, alleging that he had been disabled since May 17, 2003, due to a hand injury, migraine headaches, high blood pressure, and hepatitis C.  (Tr. 51-53, 64, 145-47).  Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ).  (Tr. 21-62, 148-60).  On May 9, 2005, Plaintiff appeared before ALJ James Prothro, with testimony being offered by Plaintiff and vocational expert, Michelle Ross.  (Tr. 229-72).  In a written decision dated November 21, 2005, the ALJ determined that Plaintiff was not disabled.  (Tr. 14-20).  The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter.  (Tr. 3-6).  Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

---

[1]  As discussed more fully herein, the parties dispute Plaintiff's age.

3

## <u>MEDICAL HISTORY</u>

On March 3, 2004, Plaintiff was examined by Dr. Jane Hanneken.  (Tr. 182-84). Plaintiff reported that he was experiencing right hand pain.  (Tr. 182).  He reported that he injured his hand in 1985 when his middle finger was caught in a hospital bed.  Plaintiff reported that he subsequently underwent two surgeries to repair his hand.  Plaintiff also reported that he was experiencing migraine headaches and high blood pressure.  With respect to his headaches, Plaintiff reported that he experienced "about two" per week and that each episode lasted "for about two to three days."  *Id.*

Plaintiff's blood pressure was measured as 160/90.  (Tr. 183).  X-rays of Plaintiff's right hand revealed a "fracture deformity" with "post traumatic shortening" of the middle finger. (Tr. 186).  The results of Plaintiff's examination were otherwise unremarkable.  An examination of Plaintiff's heart revealed regular rate and rhythm with no murmurs, clicks, gallops, or rubs.  (Tr. 183).  He exhibited "good" inspiratory effort.  An examination of Plaintiff's extremities revealed 5/5 strength with no evidence of edema or sensory impairment.  Plaintiff was diagnosed with chronic pain of the middle finger of his right hand, hypertension, and migraine headaches.  *Id.*  Plaintiff was prescribed medication.  (Tr. 183-84).  During a March 31, 2004 examination, Plaintiff reported that while he was not completely asymptomatic he had experienced a "decrease in the frequency and intensity" of his headaches.  (Tr. 180).

On May 10, 2004, Plaintiff was examined by Dr. Jennifer Johnson.  (Tr. 178-79). Plaintiff reported that "his headaches have increased in frequency."  (Tr. 178).  Plaintiff reported that in the past two weeks he had experienced two "severe" headaches.  Plaintiff's blood pressure was measured at 170/103 initially and 150/100 when measured a second time.  *Id.*

4

On June 13, 2004, Plaintiff completed a questionnaire regarding his activities.  (Tr. 81-88).  Plaintiff reported that on a daily basis he cooks, washes laundry, performs household repairs, irons, mows the lawn, and takes care of his infant daughter.  (Tr. 82-84).  Plaintiff reported that he also shops, goes golfing and fishing, and plays chess and pool.  (Tr. 84-85).

On July 2, 2004, Plaintiff participated in an cardiovascular stress test, the results of which revealed: (1) normal sinus rhythm; (2) sinus bradycardia; (3) sinus tachycardia; (4) rare premature ventricular contractions; and (5) rare premature atrial contractions.  (Tr. 192).

On July 6, 2004, Plaintiff participated in an EEG examination, the results of which revealed evidence of "discharges" which were characterized as "potentially epileptiform." (Tr. 191). The examiners reported the presence of "no additional abnormalities."  *Id.*

Treatment notes dated July 9, 2004, reveal that Plaintiff was "not taking his medications as directed." (Tr. 212).  Subsequent treatment notes reveal that when Plaintiff took his prescribed medication his blood pressure was under much better control.  (Tr. 209-20).

On September 17, 2004, Plaintiff participated in a consultive examination conducted by Dr. Richard Cause.  (Tr. 195-97).  Plaintiff reported that he had experienced headaches "for years," but was not presently taking medication to treat such.  (Tr. 195).  Plaintiff's blood pressure measured 174/118.  (Tr. 196).  An examination of Plaintiff's chest revealed that his breath sounds were clear and symmetrical with "no accessory muscle use."  An examination of his heart revealed "regular rate and rhythm."  A vascular examination revealed no evidence of clubbing, cyanosis, or edema.  Plaintiff's peripheral pulses were "intact."  Plaintiff exhibited "no evidence of joint laxity, crepitance, or effusion."  His grip strength was "intact" with no loss of manual dexterity.  Plaintiff was able to heel/toe walk, squat, and get on/off the examination table without difficulty.  Plaintiff

exhibited full range of motion with "normal" strength.  Romberg testing[2] was negative and Plaintiff walked with a "normal" gait.

At the administrative hearing Plaintiff testified that he experiences migraine headaches "everyday."  (Tr. 241).  Plaintiff reported that he can walk five miles, but cannot stand for more than 10-15 minutes.  (Tr. 258, 260).  Plaintiff testified that he can lift - with difficulty - his 35 pound daughter.  (Tr. 259-60).

The record also contains an undated questionnaire which Plaintiff completed regarding his activities.  (Tr. 137-42).  Plaintiff reported that on a typical day he prepares breakfast for himself and his daughter, after which the pair walk to the park.  (Tr. 137).  He reported that he goes fishing "when time permits" and enjoys having backyard barbeques with his neighbors.  Plaintiff reported that he drives, cooks, cleans his house, reads, talks on the telephone, visits with his neighbors, and cares for his daughter on a daily basis.  (Tr. 139).  Plaintiff also reported that he shops, performs yard work, plays cards, swims, and plays pool.  (Tr. 137-40).

## ANALYSIS OF THE ALJ'S DECISION

### A.  Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability.  *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[3]  If the Commissioner can make a

---

[2]  Romberg test is a neurological test designed to detect poor balance.  *See* Romberg Test, available at http://www.mult-sclerosis.org/RombergTest.html (last visited on May 11, 2007).  The patient stands with his feet together and eyes closed.  The examiner will then push him slightly to determine whether he is able to compensate and regain his posture.  *Id.*

[3] 1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2.  An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1420(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

**B.  The ALJ's Decision**

The ALJ determined that Plaintiff suffered from the following severe impairments: (1) hypertension; (2) sprains and strains of the elbow; (3) deformity of the distal aspect of the proximal phalanx of the middle finger with post traumatic degenerative change and shortening of the finger; and (4) episodic migraine headaches. (Tr. 16). The ALJ further determined, however, that these impairments, whether considered alone or in combination, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. *Id.* Finding that Plaintiff could perform his past relevant work as an injection mold operator, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act. (Tr. 16-19).

---

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4.  If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5.  If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

**1.  The ALJ's Decision is Supported by Substantial Evidence**

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy.  *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure.  While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform work activities subject to the following restrictions: (1) he can frequently lift and carry 10 pounds and can lift and carry a maximum of 20 pounds; (2) during an 8-hour workday he can stand and walk for six hours and sit for two hours; and (3) he cannot perform constant pushing or pulling activities with his upper extremities.  (Tr. 18).  After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.  Vocational expert, Michelle Ross, testified that based on Plaintiff's RFC he would still be able to perform his past relevant work as an injection mold operator.  (Tr. 265-67).

8

a.   The ALJ Properly Discounted Plaintiff's Subjective Allegations

The ALJ concluded that Plaintiff's "allegations regarding his limitations are not totally credible." (Tr. 19).  Plaintiff asserts that the ALJ improperly discounted his subjective allegations.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added).  As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)).  Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted).  This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 2004 WL 1745782 at *6 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)).

9

However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 2004 WL 1745782 at \*6 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 2004 WL 1745782 at \*6 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).

The Court does not dispute that Plaintiff suffers from severe impairments which impose upon him a certain degree of limitation. However, as the ALJ properly concluded, Plaintiff's subjective allegations of disabling pain and limitation are not supported by objective medical evidence. None of Plaintiff's care providers have imposed upon Plaintiff any limitations which are inconsistent with the ALJ's RFC determination. Plaintiff's subjective allegations are further contradicted by the wide range of activities in which he claims to engage. In sum, there exists substantial evidence to support the ALJ's credibility determination.

b.   The ALJ Properly Relied on the Vocational Expert's Testimony

Plaintiff asserts that the ALJ relied upon the response to an inaccurate hypothetical question.  While the ALJ may satisfy his burden through the use of hypothetical questions posed to a vocational expert, such hypothetical questions must accurately portray the claimant's physical and mental impairments.  *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996).

The hypothetical question which the ALJ posed to the vocational expert simply asked whether, in light of his limitations (as expressed in the ALJ's RFC determination), Plaintiff could perform his past relevant work, to which the vocational expert answered in the affirmative.  Because there was nothing improper or incomplete about the hypothetical questions he posed to the vocational expert, the ALJ properly relied upon his response thereto.

c.   The ALJ's Assessment of Plaintiff's Age is supported by Substantial Evidence

The ALJ determined that Plaintiff was 55 years of age as of the date of his decision in this matter.  (Tr. 15).  Plaintiff asserts that he was, in fact, 60 years old as of the date of the ALJ's decision.  Plaintiff further asserts that given his increased age he is disabled and entitled to benefits pursuant to the Medical-Vocational Guidelines (a.k.a. the Grids).

In his disability applications Plaintiff asserted that he was born on April 7, 1950.  (Tr. 51, 145).  The medical records in this matter indicate that Plaintiff was born on April 7, 1950.  At the administrative hearing, however, Plaintiff asserted that he was, in fact, born on April 7, 1945.  (Tr. 232-33).  When asked why he indicated in his applications for benefits that he was born in 1950, Plaintiff responded that:

> Because I have really have never like a 401(k) or anything like that,
> so I had planned to retire when I was 70.  This is the only way that I
> figured that I'd be able to, you know, to take care of myself.

(Tr. 233).

While perhaps not artfully worded, it appears that Plaintiff believed that by shaving five years off his true age he would be able to remain in the workforce an additional five years before retiring.  Because Plaintiff was apparently not able to participate in a retirement savings plan, he believed that this apparent deception was necessary to enable him to properly care for himself and his daughter.

Following the administrative hearing, the ALJ kept the record open to permit Plaintiff to submit adequate proof of his actual date of birth.  Plaintiff did not submit a copy of his birth certificate, but instead submitted a copy of a Certification of Birth form obtained from the Office of the County Clerk of Cook County Illinois.  (Tr. 143).  This particular form indicates that Plaintiff was born on April 7, 1945.  However, the form also states that "this copy is not valid unless displaying embossed seals of Cook County and County Clerk signature."  While the form appears to have been signed by the County Clerk, there is no indication that the form was embossed with the Cook County seal.  *Id.*

The ALJ characterized this document as "an uncertified birth certificate."  (Tr. 15).  The ALJ then observed that the preponderance of the evidence in this matter indicated that Plaintiff was born on April 7, 1950.  *Id.*  Accordingly, the ALJ concluded that Plaintiff was 55 years of age as of the date of his decision.  The ALJ's decision in this regard is supported by substantial evidence.  Plaintiff asserted on his disability applications that he was born in 1950.  The medical records in this matter indicate that Plaintiff was born in 1950.  While the Court does not believe that the

12

Certification of Birth form which Plaintiff subsequently submitted was fabricated or falsely obtained, the ALJ correctly observed that the form was not properly certified.   Accordingly, the ALJ's determination as to Plaintiff's age is supported by substantial evidence.

Plaintiff has submitted to this Court additional evidence regarding this matter which was not presented to the ALJ.  This Court, however, is precluded from considering such material. In *Cline v. Commissioner of Social Security*, 96 F.3d 146 (6th Cir. 1996), the Sixth Circuit indicated that where the Appeals Council considers new evidence that was not before the ALJ, but nonetheless declines to review the ALJ's determination, the district court cannot consider such evidence when adjudicating the claimant's appeal of the ALJ's determination.  *Id.* at 148; *see also*, *Cotton v. Sullivan*, 2 F.3d 692, 695-96 (6th Cir. 1993).

If Plaintiff can demonstrate, however, that this evidence is new and material, and that good cause existed for not presenting it in the prior proceeding, the Court can remand the case for further proceedings during which this new evidence can be considered.  *Id.*  To satisfy the materiality requirement, Plaintiff must show that there exists a reasonable probability that the Commissioner would have reached a different result if presented with the new evidence.  *Sizemore v. Secretary of Health and Human Serv's*, 865 F.2d 709, 711 (6th Cir. 1988).

This additional material consists of a copy of what appears to be Plaintiff's actual birth certificate.  According to this document, Plaintiff was born on April 7, 1945.  The Court has no reason to doubt the authenticity of this document.  However, as Defendant correctly notes even if the ALJ incorrectly calculated Plaintiff's age, such does not alter the outcome in this case.

Plaintiff asserts that when his age is accurately calculated he is rendered disabled pursuant to the Grids.  As previously noted, the ALJ, finding that Plaintiff could perform his past

13

relevant work as an injection mold operator, determined that Plaintiff was not disabled at step four of the sequential process.  This aspect of the ALJ's decision is supported by substantial evidence.  However, the Grids are employed at step five of the sequential analysis identified above.  *See, e.g., Fetters v. Commissioner of Social Security*, 160 Fed. Appx. 462 (6th Cir., Dec. 21, 2006) (citing *Smith v. Sec. of Health & Human Servs.*, 893 F.2d 106, 110 (6th Cir. 1989)) (the Grids are inapplicable where the ALJ finds that the claimant can perform his past relevant work).

Thus, even if the ALJ's assessment of Plaintiff's age is incorrect correction of such would not lead to a different result.  Accordingly, the Court is precluded from considering this additional evidence and, furthermore, there exists no basis for remanding this matter for its further consideration.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence.  Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Date:  May 18, 2007

 /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge

14